IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WILLIAM T. SIMS, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:18-cv-00014 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| HAROLD CLARKE, *et al.*, | ) | United States District Judge |
|     Defendants. | ) | |

**MEMORANDUM OPINION**

William T. Sims, a Virginia inmate proceeding *pro se*, filed this civil action alleging that the defendants violated his rights under Title II of the Americans with Disabilities Act (ADA).[1] Defendants filed a motion to dismiss, and this matter is ripe for disposition. For the reasons stated herein, the court grants in part and denies in part defendants' motion.

I. BACKGROUND

Sims alleges that prior to arriving at Green Rock Correctional Center (Green Rock) on August 25, 2016, he suffered multiple injuries which caused him to have one leg amputated at the thigh and caused his confinement to a wheelchair. Sims claims that on or about December 1, 2016, he went on a hunger strike after he had been denied "access to reasonable cell accommodations, exercise equipment, prostheses, and unencumbered wheelchair accessible showers."[2] Consequently, Sims was placed in Green Rock's segregation unit. Sims alleges that

---

[1] The court notes that Sims filed a letter which was docketed as "Additional Evidence." *See* Dkt. No. 41. In the letter, Sims states that in retaliation for having filed this action, his religious rights are being violated with regard to prayer oils. However, these allegations do not relate to Sims' ADA claims in this action. Accordingly, the court will not consider this letter in adjudicating this case. The court notes that Sims is already pursuing claims concerning religious prayer oils in Civil Action No. 7:18cv401.

[2] With regard to showers, Sims alleges that they lack slip mats and that there is molding at the floor of the door to the shower that "dangerous[ly]" hinders his wheelchair access. (Compl. ¶ 25, Dkt. No. 1, Informal Compl., Exh. J, Dkt. No. 21-1, 22.)

the cell in which he was placed was not "handicapped equipped or accessible" because it did not have appropriate hand rails or "adequate spacing." (Am. Compl. ¶¶ 15, 17-20, 39, Dkt. No. 21.)

On or about December 5, 2016, Sims saw Warden Davis and Major Northup in the segregation unit and advised them about his issues with his cell. Later, while attempting to use the toilet in his cell, Sims' knee "gave out" and he fell backwards "directly on his buttocks and spine area," unable to catch himself or brace his fall "because there was no hand rail available with which [Sims could] balance himself." An officer in the unit noticed that Sims had fallen and reported the fall to the medical unit. Thereafter, an officer and a nurse picked Sims up off the floor and placed him back in his wheelchair. (Am. Compl. ¶¶ 19-21, Dkt. No. 21.)

Sims complained to medical staff about numbness in both of his arms and hands following the fall. However, Sims was never seen by Dr. Wang, who was on duty at that time. Sims also was not taken to a handicapped equipped or accessible cell. Instead, Sims was given a "regular dose" of Neurontin, a pain medication, and left in the segregation cell for approximately six hours. Later that day, Sims was moved to the infirmary, where there was a hand rail on the wall near the toilet. However, due to the positioning of the bed relative to the toilet, the toilet was not accessible by wheelchair. (Am. Compl. ¶¶ 22-23, Dkt. No. 21.)

Sims agreed to end his hunger strike on December 5, 2016, in exchange for Green Rock's administration agreeing to hold a meeting to discuss Sims' ADA and medical grievances. At the first meeting on December 10, 2016, Qualified Mental Health Professional (QMHP) Schneider and Institutional Program Manager Bateman, both "members of the executive team, representing Warden Davis, Major Northup, and [Nurse] Cobbs," met with Sims to address his complaints about "unreasonably small cells,"[3] lack of shower slip mats, floor molding that hindered

---

[3] Sims alleges that there is twenty-five square feet of "unoccupied space" in his cell which he shares with another inmate.

wheelchair access to showers, Sims' weight gain due to lack of "exercise equipment for the disabled," and inadequate mattress and bedding "for his disability." A second meeting was held on January 10, 2017, between Sims and QMHP Schneider, Major Northup, Head Nurse Mays, Housing Lt. Childress, Nurse Cobbs, and Mrs. Shepard, to address Green Rock's "failure to adequately address the issues from the first meeting in a meaningful way." (Am. Compl. ¶¶ 24-27, Dkt. No. 21; Mem., Pl.'s Exh. A., Dkt. No. 21-1, 1; Offender Req., Pl.'s Exh. B, Dkt. No. 21-1, 2.)

Following diagnostic tests on April 7, 2017, an MRI verified the existence of spinal damage, and the MRI and x-rays showed "large amounts of stool" built up in Sims' colon. Sims states that the spinal damage and stool buildup were aggravated by his immobility and lack of reasonable access to prostheses and exercise equipment. On August 10, 2017, a nerve test revealed nerve damage that Sims claims he suffered as a result of the May 6, 2017 fall, which remained untreated. Further, Sims alleges that due to his lack of access to exercise equipment, he gained approximately sixty-nine pounds from August 25, 2016, to April 2, 2018, while at Green Rock. (Am. Compl. ¶¶ 30-32, Dkt. No. 21.)

On May 30, 2017, Sims filed an informal complaint about his difficulties accessing the showers. On June 6, 2017, Unit Manager Lovern responded to the informal complaint by indicating that he had referred the matter to the safety officer and was awaiting a response. (Informal Compl., Exh. J, Dkt. No. 21-1, 23; Resp. Informal Compl., Exh. I, Dkt. No. 21-1, 24.)

Sims argues that, as an amputee and wheelchair user, he has been denied a cell of "reasonable size," accessibility, and with adequate safety rails to accommodate his disability. He also argues that the defendants have failed to properly install or maintain exercise equipment for disabled offenders who are wheelchair users, while "similarly situated offenders at Deerfield

3

Correctional Center," a facility where Sims is not housed, have access to "state of the art exercise equipment for the disabled." Finally, defendants have failed to make "reasonable accommodations" for Sims to be "granted a prosthetic leg," and he is the only amputee housed at Green Rock who does not have a prosthetic limb. (Am. Compl. ¶¶ 36-40, Dkt. No. 21.)

As defendants, Sims names Henry Ponton, Melvin Davis, Barry Marano, Christopher Lovern, Dr. Lawrence Wang, and Teresa Cobbs. Henry Ponton is the Regional Director of the Virginia Department of Corrections (VDOC) and is "legally responsible for the overall operation of all prisons in the western region [of Virginia], including Green Rock []." Melvin Davis is the Warden of Green Rock and is "legally responsible for the operation of the prison and for the welfare of all inmates in that facility." Barry Marano is the ADA Coordinator of the VDOC and is "legally responsible for the welfare of all inmates with a disability in the Department." Christopher Lovern is a Unit Manager and the on-site ADA Facilitator for A-Unit at Green Rock and is "legally responsible for the welfare of all inmates with disabilities in that prison." Dr. Lawrence Wang is the medical doctor at Green Rock and is "legally responsible for the medical treatment and managed care of all the inmates in that prison." Teresa Cobbs is the "Registered Chief Nurse Assistant" at Green Rock and is "legally responsible for the coordination of medical appointments and treatment at the prison and outside facilities." Sims sues each defendant in their individual and official capacities. As relief, Sims seeks declaratory and injunctive relief as well as punitive and compensatory damages. (Am. Compl. ¶¶ 44-47, Dkt. No. 21.)

## II. DISCUSSION

### A. Motion to Dismiss Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does

not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id*., with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor, *Chao v. Rivendell Woods, Inc*., 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

In order to allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589

5

F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

**B. ADA**

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A state prison is a "public entity" within the meaning of the ADA, and, as such, Title II of the ADA is applicable to state prisons. *Pa. Dep't of Corr. v. Yeskey,* 524 U.S. 206, 210 (1998); *see also United States v. Georgia*, 546 U.S. 151, 154 (2006). To state a claim for violation of the ADA, the plaintiff must allege that (1) he has a disability, (2) he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of his disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

A physical condition may qualify as a "disability" within the meaning of the ADA when it "substantially limits one or more . . . major life activities." 42 U.S.C. § 12102; 29 U.S.C. § 705(20)(B). Sims has sufficiently pled that he is disabled for purposes of the ADA.

A qualified individual is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities

provided by a public entity." 42 U.S.C. § 12131. Sims also alleges facts sufficient to support a prima facie case that he is qualified to receive the benefits of a public service, program, or activity that other inmates receive.

What constitutes an exclusion or denial of benefits under the third element requires a more fact-intensive and case-specific inquiry. *Bane v. Va. Dep't of Corr.*, Civil Action No. 7:12-cv-159, 2012 U.S. Dist. LEXIS 182881, at *34, 2012 WL 6738274, at *11 (W.D. Va. Dec. 28, 2012). Under federal regulations, a public entity may not, on the basis of disability, deny a qualified individual the opportunity to participate in or benefit from an aid, benefit, or service. 28 C.F.R. § 35.130(b)(1)(i). It may not afford an opportunity "that is not equal to that afforded to others." *Id.* § 35.130(b)(1)(ii). Nor may it provide an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result. *Id.* § 35.130(b)(1)(iii). Additionally, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." *Id.* § 35.130(b)(7); *see also id.* § 35.150(a)(3); *Tennessee v. Lane*, 541 U.S. 509, 532 (2004) ("And in no event is the entity required to undertake measures that would impose an undue financial or administrative burden, threaten historic preservation interests, or effect a fundamental alteration in the nature of the service."). The regulations also specifically address correctional facilities. 28 C.F.R. § 35.152. Unless an exception is appropriate, such facilities "shall not place inmates or detainees with disabilities in facilities that do not offer the same programs as the facilities where they would otherwise be housed." *Id.* § 35.152(b)(2)(iii). Such facilities shall also "implement reasonable policies, including physical modifications to additional cells in accordance with the 2010

7

Standards, so as to ensure that each inmate with a disability is housed in a cell with the accessible elements necessary to afford the inmate access to safe, appropriate housing." *Id.* § 35.152(b)(3).

### 1. Individual liability

While the ADA protects state inmates while incarcerated, their available remedies are limited. The Fourth Circuit has held that the ADA does not recognize a cause of action against employees in their individual capacities. *Baird v. Rose*, 192 F.3d 462, 471 (4th Cir. 1999). Accordingly, the court will grant defendants' motion to dismiss as to Sims' claims against the defendants in their individual capacities.

### 2. Statute of limitations

Defendants argue that Sims' claims are barred by the statute of limitations. "Title II of the ADA does not contain a statute of limitations." *A Society Without a Name, for People without a Home, Millennium Future-Present v. Va.*, 655 F.3d 342, 347 (4th Cir. 2011). Accordingly, federal courts "borrow the state statute of limitations that applies to the most analogous state-law claim." *Id.* In Virginia, "the one-year limitations period in the Virginia Disabilities Act applies to ADA claims brought in Virginia." *Id.* at 348. Causes of action accrue under federal law when the plaintiff "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995). Consistent with that general principle, an ADA claim accrues and the statute of limitations begins to run when the plaintiff knows or has reason to know of his injury. *A Society Without a Name*, 655 F.3d at 347-48.

Generally, a statute of limitations argument is an affirmative defense, not properly raised in a motion to dismiss pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 8(c); *Goodman v. Praxair,*

*Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). However, "if all facts necessary to the affirmative defense 'clearly appear on the face of the complaint'" then the court may address the affirmative defense pursuant to Rule 12(b)(6). *Goodman*, 494 F.3d at 464.

Defendants argue that Sims' ADA claims accrued on August 25, 2016, and December 5, 2016, when he arrived at Green Rock and when he fell in his cell, respectively. And, Sims did not file this action before April 2, 2018. However, defendants do not address whether Sims has alleged a "continuing violation" of his rights, *see DePaola v. Clarke*, 884 F.3d 481, 486-87 (4th Cir. 2018), or whether Sims was entitled to any tolling of the statute of limitations while he exhausted administrative remedies, *see Battle v. Ledford*, 912 F.3d 708, 719 (4th Cir. 2019). Further, it is not clear that Sims has provided his complete grievance record attached to his amended complaint. Accordingly, the court does not have all the facts necessary to determine the timeliness of Sims' complaint and, therefore, will deny defendants' motion to dismiss on this basis, without prejudice to their opportunity to re-visit this issue in a motion for summary judgment.

### 3. Defendants Dr. Wang and Nurse Cobbs

Sims claims against Dr. Wang and Nurse Cobbs fail to state an ADA claim. Sims alleges, at most, that he is not receiving proper medical treatment from Dr. Wang and Nurse Cobbs and that he should be incarcerated at an institution that is better equipped to handle his medical needs. However, an inmate's medical treatment, or lack of treatment, does not provide a basis upon which to impose liability under the ADA. *See Burger v. Bloomberg,* 418 F.3d 882, 883 (8th Cir. 2005); *Bryant v. Madigan,* 84 F.3d 246, 249 (7th Cir. 1996); *see also Spencer v. Easter,* 109 F. App'x 571, 573 (4th Cir. 2004). Accordingly, the court will grant defendants' motion to dismiss as to Dr. Wang and Nurse Cobbs.

**4. Service, program, or activity**

Sims alleges that the defendants' ADA violations have denied him access to showers, toilet facilities, exercise equipment, a prosthetic leg, and a larger cell. Access to showers, meals, and toilet facilities are considered a "program or activity" within the meaning of the ADA. *Jaros v. Ill. Dep't. of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) (noting that inmate access to showers and meals is a program or activity); *see Phipps v. Sheriff of Cook Cty.*, 681 F. Supp. 2d 899, 916 (N.D. Ill. 2009) (collecting cases holding that showering, toileting, and lavatory use were regarded as programs and/or services under the ADA). Further, an inmate may establish an ADA claim "if he is unable to access the prison's exercise equipment." *Romero v. Bd. of Cty. Comm'rs*, 202 F. Supp. 3d 1223, 1265 (D.N.M. 2016) (citing *Norfleet v. Walker*, Case No. 09-cv-347-JPG-PMF, 2011 U.S. Dist. LEXIS 29817, at *9, 2011 WL 1085266, at *3 (S.D. Ill. March 22, 2011); *see Castle v. Knowles*, Case No. CV 1-08-01267-JAT, 2010 U.S. Dist. LEXIS 54860, at *6, 2010 WL 2232394, at *3 (E.D. Cal. June 2, 2010) (concluding that the plaintiff stated an ADA claim as a result of "his inability to participate [in meaningful exercise] because of the alleged violations of Title II")). Moreover, Sims' inability to access showers, toilet facilities, and exercise equipment is based on his disability. However, Sims has not demonstrated that defendants' denial of a prosthetic leg or a larger cell was the denial of a prison service, program, or activity or that the denial of these things was based on his disability.[4] Accordingly, the court will grant defendants' motion to dismiss as to Sims' claims concerning the prosthetic leg and cell size, but deny it as to his claims concerning showers, toilets, and exercise equipment.

---

[4] The court notes that based on Sims' recent filing, it appears he is now getting a prosthetic leg. *See* Dkt. No. 42.

### 5. Compensatory and punitive damages

Several judges of this court, including the undersigned, have recognized that Fed. R. Civ. P. 12(b)(6) does not provide a vehicle to dismiss a portion of relief sought or a specific remedy, but only provides for dismissal of a claim in its entirety. *See Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 629, 631-32 (W.D. Va. 2014) (Urbanski, J.); *Debord v. Grasham*, 2014 WL 3734320, at *1 (W.D. Va. July 28, 2014) (Jones, J.) (agreeing with *Charles* "that a Rule 12(b)(6) motion is a premature means to attack a request for punitive damages, at least where such damages are theoretically recoverable under the applicable law"); *Downs v. Winchester Med. Ctr.*, 21 F. Supp. 3d 615, 620 (W.D. Va. 2014) (Urbanski, J.) ("the question of punitive damages is not properly addressed on a motion to dismiss"); *Meeks v. Emiabata*, No. 7:14-cv-534 (W.D. Va. April 13, 2015) (Dillon, J.) (same).

As explained in *Charles*, Rule 12(b)(6) is a vehicle to dismiss a "claim" in its entirety. 21 F. Supp. 3d at 629 (citation omitted). Thus, a court "should not dismiss a complaint so long as it sets out facts sufficient to support a reasonable inference that the plaintiff is entitled to *any* relief the court can grant, even if that relief is not specifically requested." *Id*. (citations omitted) (emphasis in *Charles*). This principle is reinforced "by Rule 54(c), which provides that a prevailing party may obtain any relief to which he's entitled even if he has not demanded such relief in his pleadings." *Id*. (quoting *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002)). Applying those principles to the case before it, the *Charles* court denied as premature both: (1) a motion to dismiss all claims for relief other than injunctive relief on a statutory claim; and (2) a request for punitive damages in a separate count. *Id*. at 630, 632.

While punitive damages are not available under the ADA, *Barnes v. Gorman*, 536 U.S. 181, 189 (2002), and compensatory damages under the ADA require plaintiff to show intentional

discrimination or deliberate indifference, s*ee Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 548 (1999); *see, e.g., Taylor v. Leggett*, No. CV PX 16-115, 2017 U.S. Dist. LEXIS 36972, at *17, 2017 WL 1001281, at *6 (D. Md. Mar. 15, 2017), a Rule 12(b)(6) motion is not the properly used to seek dismissal of the relief sought.

III. CONCLUSION

For the reasons stated herein, the court will grant in part and deny in part defendants' motion to dismiss. The motion is granted as to Sims' claims against defendants in their individual capacities, as to his claims against Dr. Wang and Nurse Cobbs, and as to his claims concerning a small cell and a prosthetic leg. The motion is denied as to Sims' claims for compensatory and punitive damages and injunctive relief against defendants Ponton, Davis, Marano, and Lovern, in their official capacities, as to the denial of access to showers, toilets, and exercise equipment.[5]

---

[5] Sims recently filed a motion seeking preliminary injunctive relief. *See* Dkt. No. 42. In his motion, he advises the court that he is scheduled to be released from incarceration on June 20, 2019, and that he was recently notified that he is a candidate for a reentry program in Fairfax, Virginia. Although the letter which Sims attached to his motion appears to suggest that participation in the program is voluntary, Sims asks the court to "immediately" stop his transfer to the program because it will affect the medical treatment he is receiving. He further argues that the facility in Fairfax has an inadequate law library and inadequate exercise equipment. He also fears that there is a "risk" of his property being lost or misplaced during a transfer.

Preliminary injunctive relief is an extraordinary remedy that courts should apply sparingly. *See Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991). As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by a "clear showing," that (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). The party seeking relief must show that the irreparable harm he faces in the absence of relief is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd.*, 952 F.2d at 812. Without a showing that the plaintiff will suffer imminent, irreparable harm, the court cannot grant preliminary injunctive relief. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 360 (4th Cir. 1991).

Having reviewed the motion, the court finds that Sims has not demonstrated that he is likely to suffer "actual and imminent" irreparable harm in the absence of the preliminary injunction. His concerns about being transferred, that his property might be lost, that he might not get the same medical treatment, and that the law library and exercise equipment will be inadequate, are all speculative at best. Accordingly, the court will deny his motion.

An appropriate order will be entered.

Entered: March 31, 2019.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge