IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WILLIAM T. SIMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:18-cv-00014 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| BARRY MARANO, MELVIN DAVIS, CHRISTOPHER LOVERN, and HENRY PONTON, | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

### **MEMORANDUM OPINION**

William T. Sims, a Virginia inmate proceeding pro se, filed this civil action alleging that the defendants violated his rights under Title II of the Americans with Disabilities Act (ADA). On March 31, 2019, the court issued a memorandum opinion and order granting in part and denying in part defendants' motion to dismiss and directing the remaining defendants—Barry Marano, Melvin Davis, Christopher Lovern, and Harry Ponton—to file a motion for summary judgment within sixty days. (Dkt. Nos. 43, 44.)[1] That motion has been filed and is now before the court for resolution. (Dkt. No. 46.)

What remains in this lawsuit are Sims' claims for compensatory and punitive damages and injunctive relief against Marano, Davis, Lovern, and Ponton, in their official capacities, as to the denial of access to showers, toilets, and exercise equipment. *Sims v. Clarke*, Civil Action No.

---

[1] The court granted the motion to dismiss Sims' claims against defendants Dr. Lawrence Wang and Nurse Teresa Cobbs.

7:18-cv-00014, 2019 WL 1447484, at *6 (W.D. Va. Mar. 31, 2019).[2] For the reasons stated below, defendants' motion for summary judgment is granted as to those claims.

I. BACKGROUND

**A. Sims' Complaint Allegations**

Sims is an inmate within the Virginia Department of Corrections (VDOC) and is currently housed at Green Rock Correctional Center (Green Rock). Henry Ponton is the Regional Director of the Virginia Department of Corrections (VDOC) and is "legally responsible for the overall operation of all prisons in the western region [of Virginia], including Green Rock []." Melvin Davis is the Warden of Green Rock and is "legally responsible for the operation of the prison and for the welfare of all inmates in that facility." Barry Marano is the ADA Coordinator of the VDOC and is "legally responsible for the welfare of all inmates with a disability in the Department." Christopher Lovern is a Unit Manager and the on-site ADA Facilitator for A-Unit at Green Rock and is "legally responsible for the welfare of all inmates with disabilities in that prison." Sims sues each defendant in their official and individual capacities (as noted, the individual capacity claims have been dismissed). As relief, Sims seeks declaratory and injunctive relief as well as punitive and compensatory damages. (Am. Compl. ¶¶ 44–47, Dkt. No. 21.)

Prior to arriving at Green Rock on August 25, 2016, Sims suffered multiple injuries which caused him to have one leg amputated at the thigh and caused his confinement to a wheelchair. Sims claims that on or about December 1, 2016, he went on a hunger strike after he had been denied "access to reasonable cell accommodations, exercise equipment, prostheses, and

---

[2] In addition to dismissing Sims' claims against Dr. Wang and Nurse Cobbs, the court dismissed all of Sims' individual capacity claims. 2017 WL 1447484, at *6. The court also dismissed Sims' claims concerning cell size and a prosthetic leg. *Id.*

2

unencumbered wheelchair accessible showers." Consequently, Sims was placed in Green Rock's segregation unit. Sims alleges that the cell in which he was placed was not "handicapped equipped or accessible" because it did not have appropriate hand rails or "adequate spacing." Sims fell and injured himself attempting to get back into his wheelchair after using the toilet because there was no hand rail to balance himself. Sims was then placed in a medical segregation unit that did have a handicap rail near the toilet, but due to the positioning of the bed near the toilet, the toilet was still inaccessible. (Am. Compl. ¶¶ 15, 17–20, 22–23, 39, Dkt. No. 21.) Sims was in segregation from December 5–7, 2016. Plaintiff ended the hunger strike in exchange for an agreement to hold a meeting to address his ADA and medical grievances. (*Id.* ¶ 24.)

In addition to the issues that arose during his segregation, Sims argues that, as an amputee and wheelchair user, he has been denied a cell of "reasonable size," accessibility, and with adequate safety rails to accommodate his disability. He also argues that the defendants have failed to properly install or maintain exercise equipment for disabled offenders who are wheelchair users, while "similarly situated offenders at Deerfield Correctional Center," a facility where Sims is not housed, have access to "state of the art exercise equipment for the disabled." Finally, defendants have failed to make "reasonable accommodations" for Sims to be "granted a prosthetic leg," and he is the only amputee housed at Green Rock who does not have a prosthetic limb. (Am. Compl. ¶¶ 36–40, Dkt. No. 21.)

**B. Toilets, Showers, and Exercise Equipment**

Sims is housed in a handicap-accessible cell, and except for the times Sims alleges he was in segregation or the medical department from approximately December 5, 2016, to December 7, 2016, has been assigned to this cell since August 25, 2016. (*Id.* ¶ 11.) Sims' cell

3

has a toilet and sink inside of it, and it also has wall-mounted assist bars to assist people with mobility impairments in accessing the toilet or sink in the cell. The cell is designed to house an offender in a wheelchair. (*Id.* ¶ 12.)

Sims' pod has centrally located showers for offenders to use. In his pod, there is a handicap-accessible shower stall. The shower stall is designed so that an offender in a wheelchair can roll himself up to the shower stall and transfer himself into the shower using wall-mounted assist bars. There is also a pull-down bench in the shower stall for an offender with mobility issues to sit upon while he is using the shower. (*Id.* ¶ 13.)

Sims also has access to exercise and recreational equipment. (*Id.* ¶ 14.) Green Rock has a paved outdoor track for offenders to walk or jog on. This track is accessible to offenders in wheelchairs, and Lovern has seen Sims on the track in his wheelchair. (*Id.* ¶ 15.) Green Rock also has an outdoor area that contains weights, weight benches, pull up bars, dumb bells, a machine for completing "curls," and some free weights. This area is also accessible to someone in a wheelchair. The gated area around the weights has a doorway that is wide enough for a wheelchair. Though the area can be crowded for offenders with or without disabilities during a busy time, this area is accessible to Sims. (*Id.* ¶ 16.)

Sims and others in wheelchairs also have access to an indoor gym. In the gym, offenders play basketball or volleyball. There is also a punching bag and a corn hole set. Offenders sometimes play handball. The gym at Green Rock is accessible to offenders in wheelchairs. Lovern has seen other offenders in wheelchairs using the gym, but not Sims. (*Id.* ¶ 17.)

Sims' pod contains recreation items, such as games and a corn hole set to use during recreation times. (*Id.* ¶ 18.)
.

II.  DISCUSSION

**A.  Motion for Summary Judgment**

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact.  *Celotex*, 477 U.S. at 323.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c), 56(e).  All inferences must be viewed in a light most favorable to the non-moving party, but the nonmovant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

**B.  ADA**

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  A state prison is a "public entity" within the meaning of the ADA, and, as

such, Title II of the ADA is applicable to state prisons. *Pa. Dep't of Corr. v. Yeskey,* 524 U.S. 206, 210 (1998); *see also United States v. Georgia*, 546 U.S. 151, 154 (2006). To state a claim for violation of the ADA, the plaintiff must allege that (1) he has a disability, (2) he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of his disability. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

Defendants concede that Sims has a disability within the meaning of the ADA and that he is "otherwise qualified" to receive the benefits of the toilets, showers, and exercise facilities at Green Rock. The third prong of the inquiry—whether Sims was excluded from or denied the benefits of these services—requires "a more fact-intensive and case-specific inquiry." *Sims*, 2019 WL 1447484, at *4. "[A]n otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers . . . . [T]o assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Alexander v. Choate*, 469 U.S. 287, 301 (1985).

Under federal regulations, a public entity may not, on the basis of disability, deny a qualified individual the opportunity to participate in or benefit from an aid, benefit, or service. 28 C.F.R. § 35.130(b)(1)(i). It may not afford an opportunity "that is not equal to that afforded to others." *Id.* § 35.130(b)(1)(ii). Nor may it provide an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result. *Id.* § 35.130(b)(1)(iii). Additionally, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would

6

fundamentally alter the nature of the service, program, or activity." *Id.* § 35.130(b)(7); *see also id.* § 35.150(a)(3); *Tennessee v. Lane*, 541 U.S. 509, 532 (2004) ("And in no event is the entity required to undertake measures that would impose an undue financial or administrative burden, threaten historic preservation interests, or effect a fundamental alteration in the nature of the service."). The regulations also specifically address correctional facilities. 28 C.F.R. § 35.152. Unless an exception is appropriate, such facilities "shall not place inmates or detainees with disabilities in facilities that do not offer the same programs as the facilities where they would otherwise be housed." *Id.* § 35.152(b)(2)(iii). Such facilities shall also "implement reasonable policies, including physical modifications to additional cells in accordance with the 2010 Standards, so as to ensure that each inmate with a disability is housed in a cell with the accessible elements necessary to afford the inmate access to safe, appropriate housing." *Id.* § 35.152(b)(3).

   1. **Toilets**

As discussed above, Sims has been housed in a handicap-accessible cell since his arrival at Green Rock, with the only exception being a short time when he was in segregation from December 5 to December 7, 2016. The cell has wall-mounted assist bars to help people with mobility impairments in accessing the toilet or sink in the cell. Therefore, Sims has not been denied the benefit of using a toilet at Green Rock. Sims argues that summary judgment should be denied because the segregation areas he was housed in from December 5 to December 7, 2016, did not have adequate facilities for a handicapped person. Temporary denial of access does not violate the ADA. *See Hartman v. Costa Verde Ctr.*, No. 16cv0956, 2016 WL 7178964, at *2 (S.D. Cal. Dec. 8, 2016) ("[T]emporary and transitory denials of access do not amount to

ADA violations.") (citing *Chapman v. Pier 1 Imports (U.S.), Inc.*, 779 F.3d 1001, 1008–09 (9th Cir. 2015).

### 2. Showers

Sims' pod includes a handicap-accessible shower stall, which is designed so that an offender in a wheelchair can roll himself up to the shower stall and transfer himself into the shower using wall-mounted assist bars. Therefore, Sims has not been denied the benefit of showering at Green Rock.

### 3. Exercise equipment

Finally, Sims had extensive access to exercise equipment and exercise facilities. Therefore, Sims was not denied the benefit of exercising at Green Rock.

Sims argues that the indoor gym was inadequate because he could only sit and watch people play volleyball and basketball. Wheelchair-bound individuals are certainly capable of playing these sports. Importantly for purposes of Sims' ADA claim, Green Rock provided Sims with the opportunity to play. Moreover, Sims also has access to a walker to help him acclimate to using his prosthetic leg. Whether with his leg or his wheelchair, Sims can participate.

Sims also complains about the exercise equipment at Green Rock, stating that prison officials did not order specific types of equipment he would like to use. The ADA does not entitle disabled prisoners to a preferred modification or accommodation. Instead, Sims is entitled to "meaningful access." *See Alexander*, 469 U.S. at 301; *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 373 (D. Md. 2011) (stating that to recover damages for a Title II violation, plaintiff must show that the public entity "intentionally or with deliberate indifference failed to provide meaningful access or reasonable accommodation"). "A reasonable accommodation need not be perfect or the one most strongly preferred by the plaintiff. Meaningful access does not

mean equal access or preferential treatment." *Todd v. Carstarphen*, 236 F. Supp. 3d 1311, 1334 (N.D. Ga. 2017). Sims has received meaningful access to exercise equipment and facilities at Green Rock.

**C. Public Entities**

Defendants argue that the claims against them should be dismissed because there is no individual liability under the ADA. As noted in the introduction to this opinion, the court dismissed the individual capacity claims in its previous order. *See Sims*, 2019 WL 1447484, at *4 ("The Fourth Circuit has held that the ADA does not recognize a cause of action against employees in their individual capacities. Accordingly, the court will grant defendants' motion to dismiss as to Sims' claims against the defendants in their individual capacities.") (citing *Baird v. Rose*, 192 F.3d 462, 471 (4th Cir. 1999)).

Defendants further argue that the ADA, unlike 42 U.S.C. § 1983, does not permit suits against individuals, whether brought against that person in an individual or official capacity. Thus, because Sims failed to name a public entity as a defendant, defendants urge that Sims' claims should be dismissed on that ground alone. To the contrary, courts have used the distinction between individual and official capacity claims for purposes of Title II ADA claims. *See, e.g.*, *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009) ("Under the case law of this circuit and our sister circuits, the proper defendant under a Title II claim is the public entity or an official acting in his official capacity."). Sims' failure to name a public entity as a defendant is not fatal to his claims.

**D. Sovereign Immunity**

The Eleventh Amendment bars suits for money damages against state prisons or state prison officials acting in their official capacity. *See, e.g.*, *Wilson v. United States*, 332 F.R.D.

505, 516 (S.D.W. Va. 2019); *Nichols v. Md. Corr. Inst.*, 186 F. Supp. 2d 575, 581 (D. Md. 2002) ("The definition of 'State' [in the Eleventh Amendment] has been expanded out of necessity to include state agencies, such as the state prison system."). The Supreme Court has held in the context of state prisons, however, that "insofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *United States v. Georgia*, 546 U.S. 151, 159 (2006) (disabled inmate in state prison may sue state for money damages under Title II of the ADA where the alleged conduct actually violated both the Eighth Amendment and Title II of the ADA); *Chase v. Baskerville*, 508 F. Supp. 2d 492, 506 (E.D. Va. 2007) ("[I]n the context of state prisons, Title II validly abrogates state sovereign immunity and creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment.").

Thus, the court examines "(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment [or the Eighth Amendment];[3] and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Georgia*, 546 U.S. at 159.

### 1. Parts one and two of the *Georgia* abrogation analysis

Even if any of the defendants' conduct violated Title II, none of their alleged misconduct amounts to a constitutional violation. Sims' complaint could be construed as an Eighth Amendment conditions of confinement claim. To succeed on such a claim, Sims would need to

---

[3] The claim in *Georgia* was an Eighth Amendment claim, and as the court explained, the due process clause of the Fourteenth Amendment incorporates the Eighth Amendment's guarantee against cruel and unusual punishment. *Georgia*, 546 U.S. at 157 (citing *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947)).

establish that the inadequate conditions were "sufficiently serious" when measured by an objective standard, and the responsible prison officials had a "sufficiently culpable state of mind," that is, "deliberate indifference to inmate health or safety," when measured by a subjective standard. *Miller v. Clark*, No. 3:11-cv-00557, 2011 WL 6955512, at *2 (S.D.W. Va. Dec. 9, 2011) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments." *Stricker v. Waters*, 989 F.2d 1375, 1390 (4th Cir. 1993). This prohibition "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298.

Sims' complaints about the exercise options and facilities at Green Rock are not sufficiently serious to meet the objective standard for an Eighth Amendment conditions of confinement claim. Regarding shower and toilet facilities, Sims has had the benefit of handicap-accessible shower and toilet facilities during his detention at Green Rock. The one exception, noted above, is Sims' two-day stay in segregation when he did not have access to a handicap-accessible toilet. This brief gap in access is not sufficiently serious to constitute cruel and unusual punishment. Moreover, Sims has failed to create an issue of fact to suggest that defendants acted with a sufficiently culpable state of mind. At best, Green Rock and VDOC were negligent in not having handicap accessible facilities in segregation, and perhaps negligent in placing Sims in a situation without a handicap accessible toilet.

### 2. Part three of the *Georgia* abrogation analysis

As to the third part of the *Georgia* analysis, Sims does not specify that any of defendants' conduct violates the ADA but not the Constitution. Thus, it is not necessary to determine

11

whether Congress validly abrogated sovereign immunity for a Title II claim premised on conduct that violates the ADA but is not otherwise unconstitutional. *See Miller v. King*, 449 F.3d 1149, 1151 (11th Cir. 2006) (explaining that it is "unclear from Miller's *pro se* pleadings whether he asserts any Title II claims premised on conduct that does not independently violate the Eighth Amendment, which makes the analysis required by *Georgia* impossible"); *Hutchinson v. Cunningham*, CASE NO.: 2:17-cv-185-WKW-GMB, 2018 WL 1474906, at *26 (M.D. Ala. Jan. 23, 2018) (declining to conduct the analysis because "it is clear from a review of Hutchinson's amended complaint that his Title II cause of action is premised solely on conduct that he claims to be an independent violation of the Fourteenth Amendment"); *Rylee v. Chapman*, Civil Action No. 2:06-CV-0158-RWS, 2008 WL 3538559, at *6 (N.D. Ga. Aug. 11, 2018) ("Because Plaintiff . . . does not specify that any conduct alleged in his Complaint violated the ADA but not the Constitution, the Court finds that Plaintiff has failed to meet his burden of proving that Congress has abrogated sovereign immunity for an ADA claim premised on conduct that violates the ADA but is not otherwise unconstitutional.") (citing *Miller*, 449 F.3d at 1151).

*** 

For these reasons, Sims cannot obtain monetary relief against the defendants for actions taken in their official capacities.

### E. Injunctive Relief

The Eleventh Amendment "permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Wilson v. United States*, 332 F.R.D. 505, 517 (S.D.W. Va. 2019) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). Sims requests an injunction ordering defendants to install and maintain handicap-accessible bed and toilet rails in the segregation housing unit; provide Sims with a single cell living unit with reasonable floor

spacing according to accepted standards; provide Sims with daily access to exercise equipment that is made for disabled individuals as other exercise equipment is made available to non-disabled offenders; and to provide Sims with a prosthetic leg and access to physical therapy unencumbered by handcuffs or any security measure that would prevent or hinder the necessary therapeutic treatment. (Am. Comp. ¶ 45.)

First, Sims' claims related to cell size and his prosthetic leg were previously dismissed for failure to state a claim. *Sims*, 2019 WL 1447484, at *5 ("Sims has not demonstrated that defendants' denial of a prosthetic leg or a larger cell was the denial of a prison service, program, or activity or that the denial of these things was based on his disability."). Moreover, Sims received his prosthetic leg after this lawsuit was filed. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Therefore, Sims cannot obtain injunctive relief in relation to these claims.

Second, with respect to handicap access in the segregation unit, Sims is no longer being housed in segregation, and there is no indication that he is at imminent risk of being placed there. Once again, a plaintiff "seeking injunctive relief may not rely on prior harm." *Abbott v. Pastides*, 263 F. Supp. 3d 565, 578 (D.S.C. 2017) (citing *O'Shea*, 414 U.S. at 495–96).

Third, the court has determined that defendants are entitled to summary judgment on Sims' claim for better exercise equipment. Sims is not entitled to injunctive relief on this claim for the same reasons he cannot recover damages.

III.  CONCLUSION

For the above-stated reasons, defendants' motion for summary judgment (Dkt. No. 46) will be granted.  The court will enter an appropriate order.

Entered: February 6, 2020.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge